535 A.2d 272

Broadwood Chuckwagon, Petitioner *v.* Workmen's Compensation Appeal Board (Stovall), Respondents.

Argued February 26, 1987, before Judges CRAIG and DOYLE, and Senior Judge BARBIERI, sitting as a panel of three. Reargued September 16, 1987, before President Judge CRUMLISH, JR. and Judges CRAIG, BARRY, COLINS and PALLADINO.

*Charles W. Craven, Marshall, Dennehey, Warner, Coleman & Goggin,* for petitioner.

*Patrick Shea,* with him, *Edward Tuite, Goushian, Mooradian & Goldsmith, P.C.,* for respondent, Kenneth Stovall, Deceased, Marion Stovall, Mother.

OPINION BY PRESIDENT JUDGE CRUMLISH, JR., December 29, 1987:

On May 28, 1987, we entered an Order granting reargument of this matter limited to the issue of whether, pursuant to our prior Order and Opinion in *Broadwood Chuckwagon v. Workmen's Compensation Appeal Board (Stovall)*, 74 Pa. Commonwealth Ct. 426, 459 A.2d 1355 (1983) *(Broadwood Chuckwagon I)*, claimant Marion Stovall's benefits should terminate when her child reached the age of eighteen.[1]

The pertinent facts are set forth in *Broadwood Chuckwagon I* and are not in dispute. There we held that the claimant, whose son was killed by a co-employee, had established the requisite dependency to be entitled to benefits under Section 307(5) of The Pennsylvania Workmen's Compensation Act (Act).[2] We concluded that, because Stovall was obligated to support her minor children, the amount of the decedent's contribution attributable to the minor sister's college

---

[1] In *Broadwood Chuckwagon I,* we modified the Board's order and remanded for a determination of dependency benefits. The employer petitioned for review of the Board's subsequent order granting dependency benefits to Stovall for life. Argument on this petition was considered by a panel of this Court in February of 1987 and heard before the Court en banc on September 16, 1987.

[2] Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §561(5).

tuition was a necessity of life,[3] but only until the decedent's sister reached the age of eighteen years. *Broadwood Chuckwagon I*, 74 Pa. Commonwealth Ct. at 430, 459 A.2d at 1357.

It is Stovall's position that the Board properly awarded benefits to continue indefinitely on the ground that the Board "[knew] of no authority for a change of dependency status after the date of injury." Board decision, p. 2, Record Item No. 31.

As authority for her contention, Stovall relies on *DeGuffroy & Associates v. Workmen's Compensation Appeal Board (Bianchetti)*, 94 Pa. Commonwealth Ct. 566, 503 A.2d 994 (1985), where this Court held that dependent parents are entitled to benefits until they die. *Id.* at 567, 503 A.2d at 994. *DeGuffroy*, in turn, relied for its authority upon *Kreider v. Workmen's Compensation Appeal Board*, 10 Pa. Commonwealth Ct. 79, 308 A.2d 187 (1973). We find Stovall's reliance on these cases misplaced.

In *DeGuffroy* the employer filed a modification petition, contending that the claimant's status had changed insofar as her income exceeded her expenses. There, the Court noted that Section 413 of the Act, 71 P.S. §772, governing *modification or termination*, has no provision recognizing an economic change in the status of a dependent parent.[4] However, the instant case is an

---

[3] To establish dependence, a claimant must show actual dependency and that the decedent child's earnings were required "to provide the parent with some of the ordinary necessities in keeping with his station in life." *DeGuffroy & Associates v. Workmen's Compensation Appeal Board*, 52 Pa. Commonwealth Ct. 58, 61, 415 A.2d 437, 438 (1980).

[4] We note that Section 413 authorizes modification "upon proof that the disability of an injured employe has increased, decreased, recurred or has . . . ceased *or that the status of any dependent has changed*. (Emphasis added.)

appeal from an initial determination of dependency, which is governed by Section 307(5) and is thus distinguishable.

In *Kreider,* where the employer *did* appeal a finding of dependency, there was neither a showing nor even an assertion that a change in the claimant's status would occur. The sole allegation of error set forth by the appellant was that the Board had no authority to grant unlimited benefits in the face of legislative amendments eliminating the Act's 500-week limitation to compensation.[5]

There, we noted that the statute, as amended, no longer contained any time limit to dependency benefits but did include termination of benefits for death or remarriage of a dependent. On this basis, a panel of this Court concluded that dependent parents were entitled to benefits until they died. Indeed, Stovall argues, this amendment to the Act compels no other interpretation. However, this silence as to any *durational* limit does not admit that a dependent is eligible indefinitely. It merely means that the legislature in its wisdom chose to do away with the arbitrary cutoff of benefits.

In fact, the pertinent provision under which we decide this matter states:

> Compensation shall be payable under this section to *or on account of any child, brother, or sister, only if and while such child, brother, or sister, is under the age of eighteen* unless such child, brother or sister is dependent because of disability . . . or unless such child is enrolled as a full-time student in any accredited educational

---

[5] In 1968, the legislature deleted that portion of the Act which stated that compensation benefits due dependent parents were limited to 500 weeks. Act of January 17, 1968, P.L. 6.

institution when compensation shall continue until such student becomes twenty-three.
77 P.S. §562 (emphasis added).

Here, this Court previously determined that Stovall's dependency, and concomitant compensability, existed *on account of* the educational expenses of the deceased employee's sister, which Stovall was obligated to provide until that child reached eighteen. Hence, this Court determined that Stovall was dependent only to the extent of her parental obligations, which obligations would eventually terminate, thus rendering her no longer dependent.

Although the Board in its decision perceived "no authority for a change in dependency status," we note that Section 307 provides that "[s]hould any dependent of a deceased employe die or remarry, or should the widower become capable of self-support, the right of such dependent or widower shall cease." 77 P.S. §562.[6] What, if anything, are these limits to compensability, if not a recognition that dependency can change either through a change in financial or marital status? Indeed, implicit in this provision for cessation of benefits to dependents who remarry is a recognition that a change in family status can lead to a change in dependency status.

We believe that a determination of dependency subject to a subsequent condition, such as the one we de-

---

[6] This Court found that this provision unconstitutionally violated the equal protection clauses of the Commonwealth and U.S. Constitutions, *Oknefski v. Workmen's Compensation Appeal Board,* 63 Pa. Commonwealth Ct. 450, 439 A.2d 846 (1981). Rather than declaring the statute a nullity, we extended a widow's standard under the statute to widows and widowers alike. *Califano v. Westcott,* 443 U.S. 76 (1979). We are also instructed that a statute with a designation to a single sex shall be deemed to refer to both sexes when it would otherwise deny or abridge equality of rights. 1 Pa. C. S. §2301. However, this elimination of gender-based references in the statute does not change the underlying rationale.

scribed in *Broadwood Chuckwagon I*, comports with the overall objective of the Act, which is to compensate persons who are *actually* dependent to some extent upon a deceased worker whose death was work-related. *Walzer v. Workmen's Compensation Appeal Board (Globe Security, Inc.)*, 69 Pa. Commonwealth Ct. 468, 451 A.2d 799 (1982). *See also Eichmann v. Dennis*, 347 F.2d 978 (1965).

Accordingly, we will reverse the Board's order and remand for computation of benefits for dependency from the time of the decedent's death until Stovall's minor child's eighteenth birthday.

### ORDER

The order of the Workmen's Compensation Appeal Board, No. A-87509 dated November 15, 1985, is reversed and this case is remanded to the Board for a computation of benefits based on dependency from the time of decedent's death until claimant's minor child's eighteenth birthday.

Jurisdiction relinquished.

---

DISSENTING OPINION BY JUDGE CRAIG:

The Workmen's Compensation Law clearly provides that the dependency status of a decedent's mother is founded upon the existence of dependency "at the time of the injury,"[1] and that the compensation rights of such a maternal dependent cease only when she dies, or possibly, when she remarries.[2]

The indispensable point governing the analysis of this case is that the dependent entitled to compensation is the deceased worker's mother, *not* his sister.

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, §307(5), 77 P.S. §561(5).

[2] Section 307 of the Law, 77 P.S. §562.

Under the Law, the compensation right devolves upon and is related to a sister only where no dependent parent exists. Section 307(6) reads:

> If there be neither widow, widower, children, *nor dependent parent,* entitled to compensation, *then* to the brothers and sisters, if actually dependent upon the decedent for support at the time of his death. . . .

77 P.S. §561(6) (emphasis added). Thus the sole legal dependent for the statute's purposes is the decedent's mother.

When section 307, 77 P.S. §562, refers to compensation payable "to or on account of any . . . sister, only if and while such . . . sister, is under the age of eighteen," it clearly relates only to a situation not involved here—the case where a minor sibling is the legal dependent and compensation is paid to such sibling or on his or her account. The meaning of "on account of" becomes clear when we note the legislature's contemplation of payments through a guardian where a minor is the legal dependent. The forepart of section 307, 77 P.S. §542, expressly states that the "board may . . . at any time order and direct the compensation *payable to a child or children,* or to a widow or widower *on account of any child or children,* to be paid to the guardian of such child or children, or, if there be no guardian, to such other person as the board . . . may direct." In this case, no compensation whatsoever was awarded to the minor sister or on her account in her own right, by way of a guardian or otherwise. The award was to the mother alone.

Section 307 also reflects an assumption that a dependent parent shall continue to have that status, whereas the attainment of majority is likely to cause a child or sibling to cease being a legal dependent except where continuing full-time education (until age twenty-three). Section 307, 77 P.S. §561.

The compensation award to the mother, on the basis of her expenses of living, included the expense of providing education to her family, as of the determinative date of injury. Therefore, in construing the statute, we must pursue the provisions governing an award to a dependent mother, avoiding a nonexistent premise that the sister is the legal dependent.

More fully, the governing statutory language is as follows. With respect to a deceased worker who leaves no spouse or children of his own, section 307(5) states in full:

> 5. If there be neither widow, widower, nor children entitled to compensation, *then to the father or mother, if dependent* to any extent upon the employe *at the time of the injury,* thirty-two per centum of wages but not in excess of the Statewide average weekly wage: Provided, however, That in the case of a minor child who has been contributing to his parents, the dependency of said parents shall be presumed: And provided further, That if the father or mother was totally dependent upon the deceased employe *at the time of the injury,* the compensation payable to such father or mother shall be fifty-two per centum of wages, but not in excess of the State-wide average weekly wage.

77 P.S. §561(5) (emphasis added).

The only provision with respect to ending the compensation payable to a dependent mother is that portion of section 307 which reads:

> Should any dependent of a deceased employe die or remarry, or should the widower become capable of self-support, the right of such dependent or widower to compensation under this section shall cease except that if a widow remarries, she shall receive one hundred four weeks

compensation at a rate computed in accordance with clause 2 of section 307 in a lump sum after which compensation shall cease. . . .

77 P.S. §562. Note that, after the initial occurrence of the word "remarry," the concept of remarriage thereafter is associated only with a "widow" rather than with dependents in general. Thus, only death, not remarriage, may be pertinent to ending the dependency status of a dependent mother. Although we do not, and need not, decide the effect of remarriage here, this court has previously held that the entitlement of a dependent parent is for life. *Kreider v. Workmen's Compensation Appeal Board,* 10 Pa. Commonwealth Ct. 79, 308 A.2d 187 (1973).

If an employer or insured could reopen the dependency status of a dependent parent at any time for reexamination of changes in individual items of income or expense, then the liberal scheme of the Law is subject to destruction. In *DeGuffroy & Associates v. Workmen's Compensation Appeal Board,* 24 Pa. Commonwealth Ct. 566, 503 A.2d 994 (1985), this court correctly held that an employer or an insurer could not come in after a dependency had been established and an award made, to subject a dependent to an examination—possibly repeated examinations—of income and expenses. The difference between *DeGuffroy* and this case relates only to the procedural framework. The differing procedural vehicles—a modification petition there and an original award contest here—cannot affect the substantive rights of the dependent parent to compensation under the statute. Indeed, to impose an advance limitation upon an award so that it would cease upon the occurrence of some probable but not certain future occurrence, as the majority would do here, is perhaps even less defensible than entertaining a modification petition at a later juncture when the facts are known.

Because the language of the Law lacks any authority for subjecting the dependent status of a parent to a continuing possibility of re-examination, the board should be affirmed.

Judge BARRY joins in this dissent.